etc. et al., and 132116, Commissioner of Bristol County v. Federal Home Mortgage Corporation etc. et al. My name is Warren Burns. I am from the law firm of Sussman Godfrey, and I represent the town of Johnston, Rhode Island, and the Commissioners of Bristol County, Massachusetts. I am joined here today by my colleague John Roddy. With the Court's permission, I will reserve two minutes of time, although I am a little leery after the last case exchange. Your Honor, this is an important case because it tests the bounds of Congress's ability to exempt private, for-profit entities from non-discriminatory state taxes in an area touching on the transfer of real property, an area that is intrastate in nature. It is also important to the folks I represent, the town of Johnston and Bristol County, and towns and counties across Rhode Island and Massachusetts, who rely on the revenue from those taxes to fund their operations. Now, the acolyses, Fannie Mae and Freddie Mac, and their conservator say they don't have to pay those taxes, as the Court is well aware the government has agreed with them and intervened. The folks I represent have a different view. We would ask this Court to reverse the two district court decisions below dismissing the cases for three reasons. First, this Court should reverse because Congress has not clearly and manifestly exempted Fannie and Freddie from paying the non-discriminatory state taxes at issue. Second, because there is no rational basis to conclude that the regulation of those state taxes had a substantial effect on interstate commerce. And third, if the Court would get to it, because Fannie and Freddie are private for-profit companies and not instrumentalities of the government. I will note before I get started on these important constitutional arguments that we have a rough row to hoe today. Five of your sister circuits have ruled against many of these same arguments, as have a number of district courts. But I will submit to you that none have addressed these important constitutional questions with the clarity and precision we are asking you to do here today. I think it is important before we dive into the Constitution to discuss what we are really fighting about. The two taxes at issue, and we will call them transfer taxes for short, are fairly similar in nature. They are applied to every transfer of real property in Rhode Island and in Massachusetts. And in fact, they are very small. They amount to less than one-half of one percent on the value that is assessed to the property in question. So that amounts to $4 for every $1,000 of value of the property. Now, turning to the first issue in the constitutional analysis, which is whether Congress has clearly and manifestly indicated that Fannie and Freddie should be exempt from these taxes. I would first like to say in our opening brief, in Bristol County's opening brief, we did make the suggestion that this Court should in fact apply strict scrutiny. I don't think you have to go there, Your Honors. Under existing precedent, you can resolve this case without making new law, and I don't want to force you into that position that you may not be willing to go. And as the appellees point out, what should really guide your decision here in terms of structuring the analysis is the ACF industry's case. And so the fundamental question then is whether Congress clearly and manifestly expressed its purpose to exempt Fannie and Freddie from paying these transfer taxes. We contend they do not. To meet this test, Fannie and Freddie point solely to their charter exemptions as evidence of this manifest purpose. We think that the charter exemptions fail to establish that for two reasons. So the first really focuses on the exception language that's found in the charter exemptions. And that accepts taxes on real property that are ordinarily paid just like everyone else in the state has to pay those taxes. Now, we do have a statutory construction argument in this case, and we're not waiving that. We'll stand on it. But the essence there is that, look, you can skin this cattle a number of ways. But at the end of the day, the transfer tax looks and smells a lot like any other tax on real property. It's assessed based on the value of the property. It applies to the transfer of property, which, as we contend, is one element of control or element in the bundle of sticks that makes up property. And so we think on its face the exception language is not altogether clear that a tax like the transfer tax, which is paid throughout the nation, is very common, would not be encompassed within the exception. So are you making your statutory construction argument now, or are you making the constitutional argument that even if the statute is construed, otherwise it's unconstitutional? I don't want to conflate the two, Your Honor. This is actually the constitutional argument. So the question here is whether Congress, when it enacted the charter exemptions that are at issue in this case, whether Congress expressly or clearly and manifestly expressed its purpose to exempt the entities from the state taxes at issue, these transfer taxes. And so one element that I would submit to you that you should consider in that analysis is whether the words in the exemption, and more particularly the exception, are so clear as to fundamentally establish that that was Congress's express and manifest purpose. Aren't you just proposing a rule of construction? You're asking us to interpret the statute narrowly because it would require some more express statement in order to be constitutional? Well, I do think that given, and as you see this laid out in ACF Industries, I mean there is this presumption against preemption of state powers like taxation. So the court is called upon to make a careful analysis of whether the statute in question, or in this case the exemption language in the charters, whether that language in question clearly expresses Congress's purpose. But you can look beyond the statute as well. As in ACF Industries where the court looked at the statutory history around the statute in question there. So what I'm submitting to the court is that if you look just solely at the basis of the exemption language, and particularly the exception language in that exemption, which accepts state taxes on real property, says that they can be assessed against Fannie and Freddie's property. It's not altogether clear that the transfer taxes in this case, which look a lot like taxes on real property, are clearly exempted. The second point I would make here, though, is that as in ACF you can look to the statutory history. And bear in mind that these particular charter exemptions were promulgated at a time when it's really not in dispute that Fannie and Freddie were government instrumentalities. And as such were entitled to implied constitutional immunity from state taxation. The statutory history in this case is absolutely devoid of any evidence that Congress intended that Fannie and Freddie should be exempted from paying these ordinary taxes that attach to the transfer of property in states like Rhode Island and Massachusetts. There's absolutely no evidence on that. Rather, Fannie and Freddie have not pointed to any, and we haven't been able to find any. But you've lost me there. Why are we looking to that history when we have a statute that exempts the defendants from all taxation? It's all imposed by any state or county, and then carves out an exception. And your argument is that the exception is ambiguous. Wouldn't we normally read an exception precisely the opposite way that you're suggesting we should read it? I don't think so, Your Honor. Again, we are talking about competing sovereignties here, and I think you do have to engage in a careful analysis. That's really the purpose behind the ACF analysis, whether Congress has so clearly and manifestly expressed its purpose that the state should not be able to impose these non-discriminatory taxes on Fannie and Freddie. So part of that analysis is certainly to look at the words of the exemption in this case. And you're right. The exemption contains the broad all-taxation language at the front, and then an exception for taxes on real property that are ordinarily paid by everyone else in the states. And so I submit to you that when you're looking just at that statute, in my mind, Congress has not expressly or expressed a clear and manifest purpose, given the ambiguity in that exception, our ambiguity. For you to say an ambiguity, you're saying that we should be able to interpret a transfer tax as a tax on real property, as opposed to a tax on the transfer of the property. For purposes of Constitution analysis, you don't actually have to make that final distinction. The question is whether that language is so clear that Congress has said, Fannie and Freddie, you're out of paying transfer taxes forever. To get it to be ambiguous, you need to have two alternative readings, not one. So under your constitutional analysis, we need to find that there are two plausible readings of that language. That's right, two plausible readings. One of which is that a real estate transfer tax would be a tax on real property, to use your language. That's correct, you're right. What's the basis for that? It's really the argument, and we'll craft in here the argument that we make on the statutory construction argument, that in reality, property is nothing except a bundle of sticks. There are various aspects of property. One of that is the ability to transfer property. And the transfer tax itself is really a tax on that ability to transfer the property, which is incumbent in the notion of property itself. Beyond that, the other point to make here is that because Fannie and Freddie are instrumentalities at the time, these charter exemptions are made, or the charters are drafted, the court should also consider that as a result, they're entitled to implied immunity to begin with. In essence, what Congress was saying was, look, when you're dealing with local property, Fannie and Freddie are created for the secondary home market, but when you're dealing with local property, which is traditionally taxed by the states, we're not going to impede on the states and their exercise of that domain. And so they craft an exception, a fairly broad exception, applying to taxes on real property without giving it much definition, certainly no definition in the statutory history. I think under those circumstances, it's hardly clear and manifest. Not to go too long on that point, I'd also like to now turn to the substantial effect test. Even if this court were to find that Congress had expressed a clear and manifest purpose, the next arm of the analysis is whether the taxes in question here, the transfer taxes, are legitimately regulated, whether they have had a substantial effect on interstate commerce. Two things I want to point out here. One, there is an argument in Napoli's brief that, really, you don't even have to get to that question about the transfer taxes themselves. The analysis should stop at this broad conception of Fannie's participation in the secondary home market, which is clearly part of interstate commerce. And Judge Posner, for example, grasps onto this and to the Dekalb position. I don't think that's quite right. It doesn't follow how the Supreme Court has treated similar regulations in the past. For instance, in the Wicker case, we would never have gotten to an analysis of the particular regulation on wheat for personal consumption if they had stopped on Congress's broad ability to regulate wheat as a general. One of the cases that we're told is quite important is the Wells Fargo case, which I don't see you addressing at any length in your briefs. How do you say Wells Fargo doesn't tilt against you here? Well, I would say that there are, I guess, two elements here. So, one, Wells Fargo plays a particular role in our statutory construction arguments, and we've limited our statutory construction argument on appeal to a focus on the exception language itself and arguing that it falls within the exception. And what Wells Fargo posits in that regard is that taxes like the transfer tax are an indirect tax, and we would argue that an indirect tax nevertheless is a tax on property. Obviously, the appellees disagree. One last point on the substantial effect test. The principal argument that the appellees have raised here is that, look, there's a rational basis for this because Congress didn't want the GSEs to be subject to, you know, widely varying excessive taxes by the states. But the truth of the matter is this is no rational basis at all. Congress clearly, there's no argument, no dispute here, wanted Fannie and Freddie to be subject to direct taxes on real property, which widely vary across the states. The argument doesn't hold water. With that, I'll unless there are further questions, I'll reserve. Thank you, Your Honors, and may it please the Court. Good morning, still morning. I'm Michael Johnson from Arnold and Porter, and I represent the Federal Housing Finance Agency in its capacity as conservator of Fannie Mae and Freddie Mac. I'm arguing on behalf of all three defendants. The District Court's decisions are correct, and this Court should affirm them. These cases are just like dozens of others in which similarly situated plaintiffs have raised the exact same arguments that plaintiffs assert here. Every single court to consider them, dozens of district courts, five courts of appeals, have rejected them. That includes the Third, Fourth, Sixth, Seventh, and Eighth Circuits. To rule otherwise, this Court would obviously have to create a circuit split. There's no reason for that. The Court's reasoning in rejecting plaintiffs' arguments is well-founded in Supreme Court precedent, and this Court should follow suit. Let me start with the statutory argument, because that really forms the basis of much of plaintiffs' constitutional argument. That's the argument that the carve-out to the exemption, so the entities are exempt from all state and local taxation, except that the entity's real property shall be subject to taxation. The argument is that that somehow permits these transfer taxes. Well, that argument, as I say, has been uniformly rejected. It's inconsistent with the language of the statute, and it cannot be squared with Supreme Court precedent. As importantly, it's inconsistent with the state law and practice of Massachusetts, where the Department of Revenue specifically found that the tax at issue in this case is not a property tax. Now, the text of the statute is dispositive. So are you saying, then, that if a state had language in the statute that would state that it is, in fact, a tax on the real estate that's triggered the taxable event as a transfer, that the result might be different? No. I didn't think so. No. It's the attributes of the tax. It's the operation of the tax that makes the difference here, and this is simply not a tax to which real property is subject. The fact that the State Department of Revenue has acknowledged that is certainly persuasive to the point that this is just not a property tax, but it's not dispositive. This is a federal law issue. The scope of the exemptions, the scope of the exceptions is an issue of federal law, where we look to the state law to see how the tax operates, but we don't accept the state labels. The key issue here — Walk me through the substance, then, if you're not going to look at labels. If I own a piece of property and the governmental entities, the non-federal entities, are telling me that each year I'm going to have to pay based on the value of that property a certain amount, and I pay that on a calendar date each year, and they're also telling me, and also on the occasion when I sell the property, I also pay a smaller tax also based on the value. Why isn't all of that a real estate tax or a tax paid? Certainly. Let me give you two reasons. First, as a matter of Supreme Court precedent, the Wells Fargo case distinguishes between taxes on property and taxes on the use or transfer of property. So the Supreme Court recognizes that specific distinction. This statute doesn't say a tax on property. Correct. The state statutes do not say a tax on property, and they do not tax the property. Does the federal statute say a tax on property? It says the enterprise's real property shall be subject to taxation. Right. To the same extent other real property is taxed. So the operative words are subject to taxation, and Congress included a clause that makes clear that meaning is real property is taxed. Now, what's being taxed here is not the real property. How do we know that? We know that from Wells Fargo. We also know that from the Southern Railway case where the Supreme Court specifically held just because a tax is measured by the value of property doesn't make the tax a tax on real property. So what are the defining characteristics? Well, using plaintiff's analysis, the tax has to be on at least some of the sticks in the bundle of rights that comprise property. Did that happen here? No. If the tax were on the right, it would be imposed periodically. The tax is only triggered when the right is exercised. The tax is on the activity, not on the right. It's an activity tax, not a property tax. It's an excise tax, not a property tax. We know that not just from Wells Fargo, but we can look at the United States versus City of Detroit case where the State of Michigan crafted a tax that, in terms of its calculation, looked just like a property tax. It was a use tax on lessees of exempt property, federal government property. Michigan was upset that it wasn't recovering tax revenue when a private corporation, a private manufacturer not doing anything governmental, just leasing government property, used that building and said, no, we're not going to pay property tax. Michigan enacted a use tax that replicated the revenue that would have resulted from application of the property tax. Why would Congress, in this particular statute where they don't use the preposition on, why would Congress have wanted to distinguish between the two occasions on which I can be taxed based on the value of my real estate? I think it goes back to McCulloch versus Maryland, where the Supreme Court looked at the scope of implied constitutional immunity and said, look, the federal government is immune from all sorts of state and local taxation, but we're going to reserve on the question of whether federal government is immune from direct state taxation of real property. And since then, Congress has enacted a number of statutes that exempt a number of entities using very similar language to Fannie Mae and Freddie Mac, and it always includes that carve out. We don't know for certain why Congress has done that because, as my colleague says, there is not a dispositive legislative history, but it's reasonable to infer that Congress has done that so as not to exceed the meets and bounds of what McCulloch versus Maryland stated was permissible as a matter of implied constitutional immunity. Now, so I was describing Detroit, and the dispositive question in Detroit was, is the tax a tax on the property? If so, the exemption applies. The tax can't be collected. Or is it a tax on the use of the property? And the Supreme Court held the state made it an excise tax, not a property tax. Therefore, the exemption of property doesn't apply. The tax can be collected. Same as in Wells Fargo. So this is a well-established principle that the Supreme Court has reiterated many times. And those words of the statute, the real property must be subject to the tax, are dispositive here under Wells Fargo and under Detroit. Let me briefly, in my remaining time, touch on the Commerce Clause issues. Again, these have been uniformly rejected by each court of appeals to address them. That's the third, fourth, and the seventh. I don't think there's a real dispute here that valid federal statutes trump the state power of taxation. Do you suggest or point us to any limiting principle at all? In other words, under your analysis, could the federal government pass a statute tomorrow that exempted from state taxation all property or income derived or used in interstate commerce? I think the court would have to make new law to hold that statute invalid. The governing principle here is whether there is a rational basis to find a substantial effect on interstate commerce, and that statute would probably pass that test. Let me make sure I'm understanding what you're saying. So what I hear you saying is that the federal government could basically eliminate, largely, the ability of the 50 states to raise money to do what states do. No, I don't think that's true because the Federalist Papers – It's wrong. It's wrong, first of all, because the states have political protection. Congress is not going to enact that statute. Well, that's true. You could give that answer to any constitutional issue. And furthermore, if there is a line at which federal exemptions of particular entities from state and local taxation becomes an impermissible intrusion on the state's power to raise money to fund itself, this case is nowhere near that. These are two entities. The effect here is on one very narrow type of tax. Rhode Island and Massachusetts aren't in this court claiming that their ability to fund their operations has been materially affected. No state is going to claim that because these statutes just don't do that. If Congress passed a statute outlawing the corporate income tax or outlawing state income taxes altogether, that would be a different issue, and we might have a different analysis. But we are nowhere near that line here. Moreover, these are not ordinary corporations involved in the ordinary course of commerce. These are entities Congress created by federal statute to fulfill a specific federally important purpose and subjected to intrusive, pervasive, and constant federal supervision. So, no, these entities aren't Walmart. They're not Amazon.com. They're different. Congress thought they were special, and so, yes, Congress can give them special powers, and Congress did do that. Is that consistent with the Commerce Clause? Of course it is, because everything these enterprises do is interstate commerce. Their whole reason for being is to pool money from money centers like New York and Los Angeles and Boston and distribute it throughout the country in places where there's demand for capital in the mortgage market, like Des Moines or Cincinnati or Indianapolis or Little Rock. That's inherently interstate commerce. In a lot of ways, Fannie Mae and Freddie Mac are instrumentalities and channels of interstate commerce where we might not even need to get to a substantial effects test. But the thought that a statute that obviates the need for Fannie Mae and Freddie Mac to pay all state and local taxation wouldn't have a substantial effect on the interstate commercial activities of those federally chartered and supervised entities, it's fanciful. It's fanciful. This statute doesn't just relieve Fannie Mae and Freddie Mac of the obligation to pay transfer tax. It obviates the need for Fannie Mae and Freddie Mac to pay all state and local taxation other than that very narrow category of taxes to which real property is subject. And by the way, because of the nature of their business, they are secondary mortgage market funders. They are not real estate investors. They only come into real estate holdings as a result of foreclosure in a very limited set of circumstances. Yes, the amount of property they hold goes up and down. But in the ordinary course, they want to hold mortgages. They don't want to hold real estate. So their business is not real estate investing. Congress wouldn't have expected real property taxes to be a significant element of their income stream. So when Congress wanted to protect them from the unnecessary cost of these state taxes and the potential variability in state levels of taxation, it did that, and that protected these entities from substantial negative effects on their interstate commercial activities. The thought that there's something special about private enterprises being protected from state and local taxation is inconsistent with Supreme Court decisions like, if I may finish the thought, the Exxon versus Hunt case where Congress, as the Supreme Court described, was specifically concerned about state over-taxation of a specific industry. Congress enacted a statute that protected that industry from specific types of taxes. The Supreme Court affirmed it. The first Agricultural Bank of Berkshire County case where Congress chartered national banks. The state of Massachusetts tried to put an excise tax on them, and the Supreme Court said no. Congress has spoken. These enterprises are exempt by federal law. So this is not a unique case. Congress has done this before. There's nothing special about the fact that Fannie Mae and Freddie Mac are private enterprises. There's nothing special about the fact that the tax here is an intrastate tax. I'm not sure there's any other kind of state tax. But if we look at cases like Exxon, if we look at cases like Aloha, those were state taxes too. Deer Park. They're in our brief. So if the Court has questions, I'm happy to answer them. Otherwise, Mr. Erta is here on behalf of the United States as intervener. May it please the Court, Patrick Erta for the United States. Your Honors, as my brother has just explained, the entity's exemptions from all taxations are valid exercises of the Commerce Power. And furthermore, as to my brother's point, dressing up their statutory argument in constitutional language, my brother Johnson was also correct that that holds no water. Turning briefly to the real property exception, as Mr. Johnson has explained, that exception is based on the division between excise taxes and direct taxes that the Supreme Court has already recognized. And in addition to the cases that Mr. Johnson mentioned, there's also a case dealing with an almost identical exemption. And it's a case cited in our brief at page 23. It's the Pittman case. In that case, the exemption stated that the homeowner's loan corporation was exempt or that any real property of the corporation shall be subject to the taxation to the same extent according to its value as other real property is taxed. So it's a very equivalent exemption. However, in that case, again, it had to do with a recordation of a mortgage in Maryland. In that case, the court found that the exemption did not apply and that the regular all taxation language, which is the same type of language that's in the general clause, would apply. So as Mr. Johnson, my brother, has explained, the real property argument holds no water. As to the Commerce Clause, Congress had a rational basis for concluding that the statutory exemptions would facilitate the interstate commerce in the transfer of mortgage loan and capital. Further, this is obviously an appropriate means to achieve that end as the Third, Fourth, and Seventh Circuits have already concluded. If you have no questions, I'll relinquish the remainder of my time. Just briefly, Your Honors, we come back to two critical points of your analysis here. The first is whether Congress has expressed a clear and manifest purpose to exempt the entities. We've looked at the language. The language does not say that the entities shall be exempt only from direct taxes, not from indirect taxes, or any other type of taxes. And importantly, what we heard Mr. Johnson concede today is we don't know for certain why Congress used the language it used. Mr. Johnson argued to you that it's reasonable to infer that Congress was looking to exempt Fannie and Freddie from the transfer taxes it issues in this case. Reasonable inference is not the test in this case. It's whether Congress expressed a clear and manifest purpose. Briefly, as to the substantial effect, we heard a bit of a parade of horribles about a $400 tax on a $100,000 piece of property. At the same time, the Congress, without dispute, said that Fannie and Freddie have to pay many multiples of that in direct taxation on that property. There are no Congressional findings of substantial effect on interstate commerce, nothing in the Congressional record to show that Congress was concerned at all about a $400 tax on a $100,000 piece of property. With that, I'll conclude, Your Honors, unless you have further questions. I think we're all set. The trend may be going one direction, but the arguments are quite interesting.